FRED FISCHER, Respondent, v. STREETER MILLING COMPANY, a Corporation, et al., Appellants.

(234 N. W. 392.)

Opinion filed August 13, 1930. On rehearing January 21, 1931.

*Knauf & Knauf,* for appellants.
*Carr & Rittgers,* for respondent.

BURR, J. The plaintiff and the individual defendants are stockholders and, from time to time, directors of the Streeter Milling Company, a corporation. This corporation appeared to be in financial difficulties practically all of the time and in 1924 the board of directors, by resolution authorized the making of a loan in the sum of $7,000 and the giving of a mortgage to secure the payment of the same. In

November of that year the plaintiff together with the defendants Veil, Mueller, Schmidt and Lebedoff gave their joint and several note to A. F. Lehr for $5,000 and borrowed $1,000 from one Buck and $1,000 from one Wolf, which money went to the Milling Company. Later payments were made on this indebtedness. Shortly thereafter the signers received the note of the milling company for $7,000 executed by the then president and secretary together with a real estate mortgage on property of the milling company, securing the payment of the same. In this way the loan was made.

In January 1925 the plaintiff was elected President and general manager of the Company and continued as such for over three years. In February 1926 his son-in-law Stienstra was appointed secretary and continued as such for about a year. Prior to March 12, 1926, the plaintiff frequently advanced money for the use and benefit of the corporation. On March 12, 1926 the plaintiff as the president, and his son-in-law as secretary issued the promissory note of the Streeter Milling Company to the plaintiff for $6,152.15 and to secure payment executed a chattel mortgage upon the personal property of the corporation. On the same day the Hartford Fire Insurance Company issued a fire insurance policy on the property of the milling company, with mortgage clause attached making loss payable to mortgagees as their interests would show.

The mill property was destroyed by fire and the loss adjusted—the insurance company paying $5,000 on the buildings and $2,000 for the personal property. The $5,000 received from the insurance company as adjustment on the loss on the buildings was applied upon the amount due Lehr, and the amount due Wolf was paid pro rata by this plaintiff and defendants Lebedoff, Veil, Mueller and Schmidt, each contributing the sum of $261.75.

The $2,000 paid as loss on the personal property is claimed by the plaintiff because of the chattel mortgage given him on the personal property, and the same amount is claimed by the directors who paid the amount due Wolf. Because of the dispute the money was deposited in a bank awaiting determination by the courts.

The plaintiff brought his action to recover the amount of $3,044.83 with interest and to have the decree of the courts adjudging that because of his chattel mortgage he is "the owner and entitled to receive

and be paid the loss of $2,000." The court found in his favor as prayed, holding the defendants had no claim on the $2,000, and that plaintiff was the only one who had any interest in avails of the insurance property because of the mortgagee clause. Judgment was entered and the defendants appeal.

It is the claim of the appellants that the Streeter Milling Company never authorized the execution of the note and chattel mortgage claimed by the plaintiff, and that the corporation is not indebted to the plaintiff in any sum.

The finding of the court that the Streeter Milling Company was indebted to the plaintiff in the sum of $3,044.83 with interest at eight per cent from March 1, 1927 is sustained by the weight of the evidence. Apparently the corporation was always short of funds, and it was with difficulty that it could secure and keep on hand a sufficient quantity of wheat for grinding. It had become indebted to elevator companies to such an extent that cash in advance was demanded for wheat. The plaintiff advanced $2,000 as early as March 1925, and received the note of the company signed by himself as president, and Alex Lebedoff as Secretary. From time to time thereafter plaintiff advanced money to pay the running expenses of the company. The books of the company were not well kept and it is difficult to determine just how much the company owed him. The entire management was left to him. He sold the flour, used the money to run the mill and paid himself. Again he would advance money, and later on make payments to himself. In March 1926 he claimed the company owed him $6,152.15. Even if this be not the correct amount due at that time there is neither claim nor any evidence of fraud in his dealings with the company. Later, an audit was made to determine how much the company owed him and it is clear the directors knew the mill was indebted to its president. In fact the evidence shows that when the miller required money the directors individually suggested he go to the president to see if he would advance some and there is no doubt but what the milling company owes the president the amount found by the trial court.

The most serious difficulty deals with the note and chattel mortgage given by the company.

The minute book of the corporation and of the board of directors

shows no authorization for the issuance of either a note or chattel mortgage. Several pages of this book have been introduced as evidence and are marked exhibits, 3, 4, 7, 9, 11, 13 respectively. It is very clear that minutes are not a full and complete statement of the business transacted at the meetings. Apparently the directors and officers were not familiar with the English language. We have gone through all of these exhibits as well as all of the rest of the record and can find nothing remotely bearing upon the authorization of the issuance of a note and chattel mortgage. It is not until we reach exhibit 11, purporting to be the minutes of the meeting of the corporation held July 27, 1927, that we find any reference to a claim made by the plaintiff. This is the record:

"Upon motion made and seconded to audit Books, and Mr. Fisher to present Statement of his Acct. that the Streeter Mlg. Co. owes Mr. Fisher, Mr. Fisher was unable to Furnish and a committee to make a statement of his and the Streeter Mlg. Co. was Demanded by the Stockholders, upon motion, and Seconded that John Kirsheman, Cherk Stienstra, A. D. Lebedoff be appointed to make a thorough investigation and reports from all deposits made by Mr. Fisher and Streeter Mlg. Co. and when such reports are completed to Board of Directors."

This illustrates the language used and the manner in which the books were kept. This meeting was held after the fire loss.

The record and the testimony show that the management of the mill was left to the plaintiff as president and manager. The plaintiff himself does not testify that the board of directors ever authorized the giving of this note and mortgage. He claims that he discussed the matter individually with the directors; that in the early part of 1926 he talked with two of the directors about the company giving him security for his note; that they said "You are the manager; go ahead and get security on that stuff . . ." and that upon talking with another director he told him he wanted "to get security in the way of a chattel mortgage." Some of the directors admit conversations with the plaintiff regarding his claim and the defendant Lebedoff says the plaintiff said he should have security for the money he had advanced.

Stienstra, son-in-law of plaintiff and acting Secretary in March 1926, does not claim he was ever authorized by the directors to sign the note. Apparently he did not know about the note until he was

asked to sign it, as he says it was ready for him to sign when he came to work. He says the plaintiff was uneasy because the amount he had advanced was large, wanted some security and spoke to the directors about it; that the directors said "you are president, why don't you take it?" He says further "it was agreed that day that Dad was going to have security and this instrument was made already when I got in the bank to sign it." Some of the directors testified they never heard that plaintiff ever claimed a note and mortgage until this suit was started. It is not claimed by the plaintiff that the by-laws authorized the president and secretary to borrow money and execute mortgages, or that there was ever any official authorization by the board of directors, neither does he claim that at any meeting the matter was discussed, and authority given even informally.

It is true the plaintiff was the president and apparently in sole charge of the affairs of the corporation. Therefore had he executed a note and mortgage to a third person to secure a pre-existing debt it would be considered to have been executed by an officer having authority. See Farmers State Bank v. Brown, 52 N. D. 806, 204 N. W. 673. But here we have a case where the president executed a note and mortgage to himself and so the question of apparent authority is not involved. He knew the extent of his authority. While it is manifestly unjust for the milling company to repudiate the debt when the directors knew the president was paying the bills of the company and advancing money to keep it running, and so the plaintiff has a claim against the milling company, nevertheless when he gives himself security upon the property he is taking a special privilege and giving himself a preference when the corporation is in fact insolvent. Had the board of directors met and authorized the president and the secretary to execute the note and mortgage to the president the rule set forth in Krumpelmann v. Ulsaker Printing Co. 50 N. D. 622, 197 N. W. 689, and Tourtelot v. Whithed, 9 N. D. 467, 84 N. W. 8, might apply.

It is the claim of the plaintiff that the testimony he produced shows that when he spoke to directors about getting security they told him to go ahead and take it, and therefore this was a sufficient authorization. A corporation can act only through its directors or officers authorized to transact business. Such individual assents by directors

are not official. That formal authorization is necessary must have been known to the plaintiff because at the meeting in December 1924 a resolution was adopted authorizing the execution of a mortgage for $7,000 and directing the president and secretary to sign the mortgage. The plaintiff was one of the directors and was present at that meeting and signed the minutes. Thus he knew what was required.

It is the claim of the appellants that they have a lien upon this $2,000 for the amount which they paid on the loan from Wolf and to secure which they received a mortgage on the real property. The loan obtained from Lehr, Buck and Wolf was made to Viel, Mueller Schmidt and Lebedoff and the plaintiff individually, for the benefit of the milling company, and the corporation, about the time the loan was made, apparently gave its note to these same persons, signed by its president and Lebedoff the secretary, to secure them. Under the mortgagee clause loss was payable to mortgagees of the insured property. They were mortgagees of the real property only. The full amount of the sum paid for loss on the real property went to them and was applied on the claims for which they were liable. They had no mortgage on the personal property and have no claim to the money paid for its loss. Thus even if they could claim subrogation they could not be subrogated to more than the amount paid as insurance on the buildings, for this is all their mortgage covered. They do not have a special lien upon the assets of the company. They have a claim against the milling company for the amount which they advanced the same as the plaintiff has.

Judgment should be entered finding the milling company owes the plaintiff the sum found by the trial court and further owes this plaintiff together with the defendants Viel, Mueller, Schmidt, and Lebedoff the sum of $261.75 each; and that the $2,000.00 paid by the insurance company for the loss on the personal property belongs to the milling company as an asset, with no special preference to any of the individual parties.

BURKE, Ch. J., and NUESSLE, BIRDZELL and CHRISTIANSON, JJ., concur.

## On Rehearing.

BURR, J. A rehearing was granted in this case. We have re-examined the evidence thoroughly and are satisfied that the opinion, as originally written, is correct. Such opinion, therefore, is adopted as the decision of this court.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.